# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DANIEL CATALANO, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 15-4189 (KM) (JBC) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| CITY OF NEWARK, DET. THOMAS DEL | : | |
| MAURO, DET. BRIAN COSTA, and | : | |
| P.O. EDWARD SANTIAGO, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## KEVIN MCNULTY, U.S.D.J.

## I.    INTRODUCTION

The plaintiff, Daniel Catalano, was a pretrial detainee at the Monmouth County Jail, in Freehold, New Jersey, when he commenced this action.[1] He is proceeding *pro se* and *in forma pauperis* with a civil rights complaint filed under 42 U.S.C. § 1983.

Now before the Court is a motion by defendants to dismiss Mr. Catalano's fourth amended complaint under Federal Rule of Civil Procedure 12(b)(6). Irrespective of that motion, however, the Court is obligated to review the fourth amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. Upon review, Mr. Catalano's third cause of action, for violation of the Equal Protection Clause of the Fourteenth Amendment, will be dismissed.

The Court also decides defendants' unopposed motion to dismiss the fourth amended complaint. For the reasons stated below, the motion will granted in part and denied in part.

---

[1]    His detention was apparently unrelated to the arrest that is the subject of this action.

## II. BACKGROUND

Mr. Catalano commenced this action on June 19, 2015, with a complaint against the Newark Police Department and two unknown officers. (ECF No. 1.) This Court, after performing a screening review, found that Mr. Catalano stated claims of unlawful search and seizure, false arrest, and false imprisonment against the unknown officers, and it gave Mr. Catalano ninety days to file an amended complaint identifying those defendants. (ECF Nos. 3, 4.) The Court further dismissed the complaint with prejudice as against the Newark Police Department, which is not an independent entity that can sue or be sued. Construing the allegations liberally as being asserted against the City of Newark ("the City"), I nevertheless found that the complaint failed to state a municipal liability claim under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). (ECF Nos. 3, 4.)

Mr. Catalano filed a first amended complaint on October 29, 2015, alleging claims against the City and again against two unknown officers. (ECF No. 6.) An accompanying letter explained that Mr. Catalano had "filed numerous public records requests with Newark," but had not yet received any identification of the officers who arrested him. (ECF No. 6-1.) Upon screening, this Court found that the first amended complaint stated the same claims against the unknown-officer defendants and further found that this time Mr. Catalano had stated a *Monell* claim against the City. (ECF No. 7.)

On November 30, 2015, Mr. Catalano filed a second amended complaint. (ECF No. 10.) The claims asserted in this complaint were substantively the same as those raised in the first amended complaint, but in the place of unknown defendants it named three specific officers: Det. Thomas Del Mauro, Det. Brian Costa, and P.O. Edward Santiago. (*Id.*) The Court accepted the complaint for filing and directed that it be served upon the defendants. (ECF No. 11.)

2

Defendants thereafter filed a motion to dismiss the second amended complaint under

Federal Rule of Civil Procedure 12(b)(6). (ECF No. 27.) Mr. Catalano, in response, moved to

file, and concurrently did file, a third amended complaint. (ECF Nos. 28, 29.) In November

2016, he moved to file a fourth amended complaint. (ECF No. 38.)

On January 19, 2017, this Court granted the motion to file a fourth amended complaint

and administratively terminated the dismissal motion and the motion to file a third amended

complaint. (ECF No. 40.) It also notified Mr. Catalano that no further amendments would be

accepted without a proper motion under Federal Rule of Civil Procedure 15. (*Id.*)

## III. ALLEGATIONS OF THE FOURTH AMENDED COMPLAINT

The fourth amended complaint (ECF No. 42) presents the following allegations, which

will be construed as true for the purposes of this opinion.

The fourth amended complaint alleges that Mr. Catalano and non-party Nicholas Frunzi,

both of whom are white (a fact relevant to his claims), were in a vehicle parked on Johnson

Avenue in Newark at approximately 9:00 p.m. on August 20, 2013. It alleges that Mr. Catalano

and Mr. Frunzi turned left onto Clinton Avenue and saw a white minivan parked on the street.

Mr. Frunzi, who was driving, "committed no traffic offenses," but the complaint states that the

white minivan "made a u-turn on Clinton Ave. to follow" their car. The complaint recounts that

the defendant police officers, who were in the white minivan, pulled up next to Mr. Catalano and

Mr. Frunzi while stopped at a traffic light and yelled, "Where are you from?" They did not,

however, identify themselves as police officers. Mr. Catalano states that he ignored the question

and that he and Mr. Frunzi drove away. Defendants then stopped Mr. Catalano and Mr. Frunzi.

Mr. Catalano alleges that defendants immediately began searching him, Mr. Frunzi, and

the vehicle, without at first asking any questions. He contends that he and Mr. Frunzi denied

accusations that they had been buying drugs. The complaint states that, despite finding no drugs or any other contraband, defendants arrested Mr. Catalano and Mr. Frunzi and placed them in the rear of the white minivan. It asserts that defendants then drove to Johnson Avenue and arrested two more people "simply because their ID did not list Johnson Ave as their address."

Mr. Catalano recounts that he was placed in a holding cell for twelve hours following his arrest and then released. When he appeared for a trial on October 9, 2013, the single charge of "wandering to obtain CDS" was dismissed "because even assuming arguendo that what the officers wrote in the report was true it did not constitute a crime."

The complaint asserts that various statements in the arrest report were false, and that officers of the Newark Police Department have, as a matter of practice, inserted fabricated statements in reports to justify otherwise improper arrests. It further contends that the Newark Police Department has a custom and practice of using "racial stereotypes in their decisionmaking as it relates to stopping, detaining, or making arrests." Mr. Catalano asserts that the Newark Police Department knew of this because of U.S. Department of Justice oversight reports, civilian complaints, and testimony as to such practices, including estimates that up to 75% of stops by Newark police were unconstitutional. Despite this, Mr. Catalano alleges, the Newark Police Department failed to take corrective action or make changes to police training.

Like the first amended complaint, the fourth amended complaint asserts claims under 42 U.S.C. § 1983 for unlawful search, false arrest, and false imprisonment against the defendant officers (now identified) and for *Monell* liability against the City. The fourth amended complaint adds a new claim against the defendant officers under the Equal Protection Clause of the Fourteenth Amendment for racial profiling and selective enforcement. In support of this claim, Mr. Catalano alleges that defendants "signaled [sic] out the plaintiff because of his race, or more

4

simply put, because he is white, and was in a majority African American neighborhood, that defendants allege is a known drug area." Mr. Catalano notes that defendants did not stop "persons driving off the street who did not appear to be white." He thus alleges that defendants "relied on cultural stereotypes that white persons were in the area to purchase narcotics."

The fourth amended complaint seeks compensatory damages, including compensation for pain, suffering, and humiliation, with pre- and post-judgment interest, as well as punitive damages.

## IV. SCREENING OF THE FOURTH AMENDED COMPLAINT

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("the PLRA"), district courts must review a complaint when the plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to sua sponte dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See id.* As the fourth amended complaint has not yet been subject to this mandatory screening, the Court now reviews that pleading.

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

In Mr. Catalano's fourth amended complaint, the first cause of action, for unlawful search, false arrest, and false imprisonment, and the second cause of action, a *Monell* claim against the City, are substantially the same as those claims asserted in prior complaints, which have already been subject to screening review by the Court. *(See* ECF Nos. 1, 3, 4, 6, 7.) They will be permitted to proceed for the reasons stated in the earlier opinions. (ECF Nos. 3, 7)

Mr. Catalano's equal protection claim, however, is new to this pleading, and, as Mr. Catalano is still proceeding *in forma pauperis*, the Court will screen it under 28 U.S.C. § 1915(e)(2)(B). To state an equal-protection claim for racial profiling or selective enforcement, a plaintiff must allege that acts by law enforcement "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002); *see also Patterson v. Strippoli*, 639 F. App'x 137, 144 (3d Cir. 2016) (selective enforcement); *Alvin v. Calabrese*, 455 F. App'x 171, 177 (3d Cir. 2011) (racial profiling).

Establishing discriminatory effect requires that a plaintiff was a member of a protected class who received different treatment than similarly situated persons in an unprotected class.

6

*Alvin*, 455 F. App'x at 177; *Bradley*, 299 F.3d at 206. A plaintiff must show discriminatory

purpose by demonstrating that the defendant took the challenged action "at least partially

because the action would benefit or burden an identifiable group." *Doe ex rel. Doe v. Lower*

*Merion Sch. Dist.*, 665 F.3d 524, 548 (3d Cir. 2011) (citing *Pers. Adm'r v. Feeney*, 442 U.S. 256,

279 (1979)); *see also Iqbal*, 556 U.S. at 676–77 (finding that stating discrimination claim

requires pleading facts that show challenged policy was adopted "not for a neutral, investigative

reason but for the purpose of discriminating"). "Thus, the mere awareness or consideration of

race should not be mistaken for racially discriminatory intent or for proof of an equal protection

violation." *Doe*, 665 F.3d at 548; *cf. Patterson*, 639 F. App'x at 143–44 (finding sufficient

evidence of discriminatory purpose because the jury could find that the defendant "harbor[ed]

racial animus"); *Carrasca v. Pomeroy*, 313 F.3d 828, 834 (3d Cir. 2002) (finding that the

plaintiffs pleaded facts sufficient to find discriminatory purpose because the defendant employed

what was "arguably . . . a pejorative racial slur").

     In this case, while Mr. Catalano alleges that defendants stopped and arrested him and Mr.

Frunzi, who were white, while not stopping non-white persons who were engaged in similar

behavior, he does not allege any facts that would suggest that the defendants acted with

discriminatory purpose. (*See* ECF No. 42 ¶¶ 72–76.) Mr. Catalano contends that defendants

"relied on cultural stereotypes that white persons were in the area to purchase narcotics," that

there were no other facts at all that would have supported an inference that he was buying drugs,

and that there was a history of discriminatory stops by the Newark Police. The allegations are

thin, and proof may be difficult, but I will permit the equal protection claim to proceed.

## V.    DEFENDANTS' MOTION TO DISMISS

Defendants have now filed a motion to dismiss the fourth amended complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 45.) Defendants raise arguments that the Newark Police Department is not a proper defendant in this case, that Mr. Catalano fails to state claims for false arrest or false imprisonment, that the claims against the defendant officers are time barred, that Mr. Catalano fails to state a claim for supervisory liability, that Mr. Catalano fails to state a claim for *Monell* liability, that Mr. Catalano fails to state a claim for racial profiling or selective enforcement, that claims against the defendant officers are barred by the doctrine of qualified immunity, and that Mr. Catalano's demands for punitive damages and pre-judgment interest must be dismissed. (*Id.*) In the interests of clarity, these arguments are addressed one by one.

Mr. Catalano, despite receiving an extension of time to do so (*see* ECF No. 46), filed no papers opposing this motion. Nevertheless, consistent with the well-established preference for deciding claims on their merits rather than on procedural technicalities, *see Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990), the Court reviews the substantive arguments advanced in this motion as applied to the fourth amended complaint.

As discussed above, the legal standard for deciding a motion to dismiss under Rule 12(b)(6) is the same as that used for screening review under the PLRA. As the Court has already outlined this standard in the screening portion of this opinion, I do not repeat it here.

### a.    Newark Police Department as an Improper Defendant

Defendants contend that "it appears that some of the counts of Plaintiff's Complaint are brought improperly against the Newark Police Department." (Defs.' Br. in Supp., ECF No. 45-3, at 10.) That is correct. *See Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 (3d Cir.

2014). This Court, upon screening Mr. Catalano's original complaint, dismissed his claims against the Newark Police Department with prejudice on this basis. (ECF Nos. 3, 4.) The claims, to the extent they may be asserted against the Department—and I am not sure they are—will be treated as claims against the City.

### b. Claim for False Arrest and False Imprisonment

Defendants' argument that the fourth amended complaint fails to state a cause of action for false arrest and false imprisonment boils down to a contention that the defendant officers *in fact* had probable cause to arrest Mr. Catalano for "wandering." (*See* ECF No. 45-3 at 16.) Defendants assert that, (1) as Mr. Catalano admitted to sitting in a parked vehicle "long enough to observe numerous cars leaving Johnson Avenue and numerous people outside their homes," (2) as the area is "notorious for drug sales," and (3) as Mr. Catalano and Mr. Frunzi ignored the defendant officers' questions and drove away, the officers had probable cause to arrest them. (*See id.* at 16–17.) Defendants further argue that the false imprisonment claim for the detention following the arrest must fail as the defendant officers had probable cause for the initial arrest. (*See id.* at 17–18.)

As a general matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

9

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

A § 1983 claim for false arrest requires the plaintiff to show "(1) that there as an arrest[] and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012); *see also Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Whether arresting officers had probable cause depends on "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also Minatee v. Phila. Police Dep't*, 502 F. App'x 225, 228 (3d Cir. 2012); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). Whether an arresting officer had probable cause is typically a question of fact, but it may be decided as a matter of law if the evidence, interpreted most favorably to the adverse party, would not support any other factual finding. *Trunzo v. Mayer*, 658 F. App'x 654, 658 (3d Cir. 2016); *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016); *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

Defendants apparently arrested Mr. Catalano for "wandering to obtain or sell CDS," under New Jersey Statutes Annotated § 2C:33-2.1. This statute defines an offense as when a person,

> whether on foot or in a motor vehicle . . . (1) . . . wanders, remains or prowls in a public place with the purpose of unlawfully obtaining or distributing a controlled dangerous substance or controlled substance analog; and (2) engages in conduct that, under

the circumstances, manifests a purpose to obtain or distribute a
controlled dangerous substance or controlled substance analog.

N.J. Stat. Ann. § 2C:33-2.1(b). The statute further explains that conduct that may adequately

manifest a purpose to obtain or distribute a controlled dangerous substance includes:

> (1) Repeatedly beckoning to or stopping pedestrians or motorists in
> a public place;
>
> (2) Repeatedly passing objects to or receiving objects from
> pedestrians or motorists in a public place; [and]
>
> (3) Repeatedly circling in a public place in a motor vehicle and on
> one or more occasions passing any object to or receiving any
> object from a person in a public place.

N.J. Stat. Ann. § 2C:33-2.1(c).

Defendants' argument that the claim for false arrest and false imprisonment must be

dismissed because the defendant officers had probable cause for the arrest, whatever its merits, is

premature at this, the pleading stage. Accepting all of Mr. Catalano's factual allegations as true,

see Goodwin, 836 F.3d at 327, I am required to assume the following:

1. At approximately 9:00 p.m. on August 20, 2013, Mr. Catalano and Mr. Frunzi were

    parked, in Mr. Frunzi's car, by a playground on Johnson Avenue in Newark.[2] (ECF

    No. 42 ¶¶ 9–10.)

---

[2] Defendants argue that Mr. Catalano admitted that he was parked in front of the playground
"long enough to observe numerous cars leaving Johnson Avenue and numerous people outside
their homes on the street." (ECF No. 45-3 at 16–17.) Newark is a city with regular automobile
traffic. It is not clear to the Court that this would have required Mr. Catalano to have been parked
for a significant amount of time, though it appears from the fourth amended complaint that he
admits being parked there for around ten minutes. Additionally, the Court notes that prior
versions of Mr. Catalano's complaint asserted that the place on Johnson Avenue where he and
Mr. Frunzi had parked was not within view of the defendant officers, who were allegedly parked
around the corner on Clinton Avenue. (See ECF No. 6, at 7; ECF No. 10, at 8.) As Mr. Catalano
omitted this allegation from the fourth amended complaint, and as the issue would not be
dispositive at this time, the Court will assume for the purpose of this analysis, that the defendant
officers could have known that Mr. Catalano and Mr. Frunzi had been parked on Johnson
Avenue for around ten minutes.

2. Both Mr. Catalano and Mr. Frunzi were white males and were in a majority African-American neighborhood. (*Id.* ¶¶ 7–8, 73.)

3. At approximately 9:10 p.m., they drove down Johnson Avenue and turned onto Clinton Avenue. (*Id.* ¶ 12.)

4. Mr. Frunzi committed no traffic offenses. (*Id.* ¶ 14.)

5. Defendant officers pulled up next to Mr. Catalano and Mr. Frunzi at a traffic light and yelled "Where are you from?," but did not identify themselves as police officers. Mr. Catalano and Mr. Frunzi ignored the question and drove away. (*Id.* ¶¶ 16–17.)

6. Mr. Catalano and Mr. Frunzi, after being stopped by the defendant officers, denied allegations of purchasing drugs. (*Id.* ¶ 21.)

7. A search by the defendant officers of Mr. Catalano, Mr. Frunzi, and the car revealed no drugs or contraband. (*Id.* ¶¶ 19, 22.)

8. Mr. Catalano and Mr. Frunzi had less than five dollars cash total in their possession. (*Id.* ¶ 28.)

9. Mr. Catalano and Mr. Frunzi had no outstanding warrants "or reason to justify arrest or detainment." (*Id.* ¶ 35.)

At this time, the Court cannot find as a matter of law that the defendant officers had probable cause to arrest Mr. Catalano for wandering to obtain CDS or any other offense. Defendants offer no case law suggesting that sitting in a parked car for ten minutes and then driving down a public street may be considered a manifestation of a purpose to obtain or distribute a controlled dangerous substance under § 2C:33-2.1. That statute identifies three types of behavior that may be such a manifestation, which are repeatedly beckoning or stopping other persons, repeatedly passing objects to or from other persons, or repeatedly circling the area and

12

passing an object to or from a person. N.J. Stat. Ann. § 2C:33-2.1(c). Accepting the facts pleaded in the fourth amended complaint, Mr. Catalano and Mr. Frunzi were not engaged in any of these behaviors.[3] As defendants' only argument that the fourth amended complaint fails to state a claim for false arrest and false imprisonment is that the defendant officers had probable cause to arrest Mr. Catalano, and as the Court cannot now determine as a matter of law that the officers had such probable cause, this portion of the motion will be denied.

### c. Timeliness of the Claims Against the Defendant Officers

Defendants next argue that the false arrest and false imprisonment claims against the defendant officers are time-barred by the applicable statute of limitations. (ECF No. 45-3 at 18–24.) While acknowledging that Mr. Catalano's original complaint, which alleged the same claims against two "unknown officers" was timely, they contend that Mr. Catalano "did not make efforts to identify the arresting officers until September 8, 2015, which is after the 2-year statutory deadline." (*Id.* at 18.) Defendants urge that Mr. Catalano did not exercise due diligence in trying to discover the names of the officers who arrested him before filing his complaint. (*Id.* at 23–24). They further allege that Mr. Catalano "violat[ed] fictitious party practice" by naming *two* unknown defendants in his original complaint, but then amending to name *three* defendant officers. (*Id.* at 24.)

Defendants are correct that claims under § 1983 borrow New Jersey's two-year statute of limitations for personal-injury claims. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013); *Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 828 (3d Cir. 2011); *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). The date when such a cause of action accrues, however, is a matter of federal law. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). "Under

---

[3]     Indeed, Mr. Catalano affirmatively states that neither he nor Mr. Frunzi passed any objects to or from anyone. (ECF No. 42 ¶¶ 39–40.)

federal law, a cause of action accrues, and the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (internal quotation marks omitted). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.*; *see also United States v. Kubrick*, 444 U.S. 111, 120 (1979).

All events underlying this action occurred on August 20, 2013, with Mr. Catalano's detention apparently extending into August 21, 2013. (*See* ECF No. 42.) Mr. Catalano commenced this action with a complaint dated May 28, 2015 and received by the Court on June 19, 2015. The original complaint, as Defendants seem to concede, was filed within the applicable limitations period. Mr. Catalano did not name specific defendant officers until he filed his second amended complaint, dated November 13, 2015 and received by the Court on November 30, 2015. Both of those dates fall outside the two-year limitations period. (ECF No. 10.) To be timely then, the claims against the officers would have to relate back to the date of the "John Doe" allegations in the first complaint.

Federal Rule of Civil Procedure 15(c) permits an amended complaint to relate back to the date of the original complaint when, among other grounds, "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). When a plaintiff commences an action against "John Doe" defendants and subsequently seeks to amend the complaint with their true names, the question of timeliness is considered under the New Jersey "fictitious-party" rule, rather than normal relation-back doctrine. *See McGill v. Doe*, 541 F. App'x 225, 227–28 (3d Cir. 2013); *DeRienzo v. Harvard Indus., Inc.*, 357 F.3d 348, 353 (3d Cir. 2004). New Jersey Rule of Court 4:26-4 permits a plaintiff to commence an action against a fictitious defendant if the defendant's true name is unknown, so long as the complaint includes

"an appropriate description sufficient for identification," and it provides that the plaintiff may later amend the complaint to substitute in the defendant's true name. R. 4:26-4.

The fictitious-party rule will apply to let a plaintiff name previous John Doe defendants after the limitations period has run only if (1) the plaintiff has "exercised due diligence to ascertain the defendant's true name before and after filing the complaint" and (2) the newly named defendant is not prejudiced. *DeRienzo*, 357 F.3d at 353–54; *see also McGill*, 541 F. App'x at 228. To demonstrate due diligence, a plaintiff who impleads a fictitious party must "[a]t a minimum, . . . 'investigate all potentially responsible parties in a timely manner.'" *McGill*, 541 F. App'x at 228 (quoting *Matynska v. Fried*, 175 N.J. 51, 53 (2002)); *see also DeRienzo*, 357 F.3d at 354. What suffices to constitute due diligence, however, "will vary with the facts of each case." *O'Keefe v. Snyder*, 83 N.J. 478, 499 (1980); *see also McGill*, 541 F. App'x at 228; *DeRienzo*, 357 F.3d at 354.

In his original complaint, Mr. Catalano noted, "I have wrote Newark Courts to try to obtain the officers names to no avail." (ECF No. 1 at 6.) The Court dismissed this complaint for failure to state a claim against the only party who could be served, but gave Mr. Catalano 90 days to identify and name the defendant officers. (ECF No. 4.) In a letter received by the Court on September 9, 2015 (postmarked September 3, 2015), Mr. Catalano requested the Court's help in obtaining the officers' names, stating that he had "been trying to obtain the police report . . . from the Newark Police Dept. . . . , however they have not complied with my open records request." (ECF No. 5.) The first amended complaint, received by the Court on October 29, 2015, included a letter in which Mr. Catalano requested additional time to identify the defendant officers, reporting that he had "filed numerous public records requests with Newark trying to obtain the [names of the officers]," but that the City had responded staring that it was "unable to

find the charging document." This letter was accompanied by copies of a records request form, dated August 11, 2015 and stamped as received by the City on August 18, 2015, and a September 22, 2015 response from the City stating that the report could not be located. (ECF No. 6-1.)

Mr. Catalano sent a letter seeking a second extension of time to identify the defendant officers, which the Court received November 12, 2015 (postmarked November 9, 2015). This letter stated that the City had responded to his most recent records request with the wrong record, *i.e.*, one that pertained to a different arrest. Enclosed were copies of a records request form dated September 28 and stamped received by the City on October 13, 2015, as well as an October 19, 2015 response from the city and an attached arrest report from an arrest on June 14, 2013 (not the date of the incident at issue here). (ECF No. 9.) Shortly thereafter, Mr. Catalano filed his second amended complaint, dated November 13, 2015 and received by the Court on November 30, 2015, which named the three defendant officers and included a report from the date of the arrest at issue, which indicated that those three officers were present. (ECF No. 10.)

The City filed a letter dated March 11, 2016, stating that it would seek dismissal of the action as untimely. (ECF No. 21.) In response, Mr. Catalano submitted an affidavit, dated April 29, 2016, outlining his efforts to identify the defendant officers. (ECF No. 25.) He averred that "[b]efore and after 8/11/13 [sic] Daniel Catalano submitted numerous public records requests to the Newark city clerk attempting to gain the police report from the 8/20/13 incident so he could name the officers in his lawsuit," but that the City had not produced a document in response to the "first request" and had sent the wrong arrest report in response to the "second request." (*Id.*) He further reported that in response to a "third public records request" the City had mailed the correct arrest report on November 2, 2015.

Given this history, I find that Mr. Catalano has made a sufficient showing that he exercised due diligence in attempting to identify the defendant officers. Mr. Catalano filed at least three public records requests before receiving the proper arrest report from the City, and at least one of these requests was filed within the limitations period, contradicting defendants' claim that Mr. Catalano "waited until the statute of limitations expired to even request the names of his arresting officers." (ECF No. 45-3 at 23.) The original complaint, dated May 2015, indicates that Mr. Catalano had already been making efforts to discover who arrested him. (ECF No. 1.) Particularly given Mr. Catalano's status as an incarcerated, pro se litigant, these efforts clearly meet the minimum requirement that a plaintiff "investigate all potentially responsible parties in a timely manner." *Matynska*, 175 N.J. at 53.

The Court is not moved by defendants' argument that the fictitious party rule does not permit the plaintiff to identify three three defendant officers when his original complaint named only two "unknown officer" defendants. (*See* ECF No. 45-3 at 18, 24.) Defendants cite no authority in support of this interpretation, and at least one New Jersey court has expressly rejected it. *See Fede v. Clara Maass Hosp.*, 221 N.J. Super. 329, 335–38 (Law Div. 1987) ("[T]here is no logical reason or rule requiring multiple "John Does" in order to substitute multiple defendants."). Under these circumstances, any other result would be untenable. The defendants' argument is formalistic in the extreme—*i.e.,* it would be defeated by a complaint that named John Doe #3 in addition to John Does #1 and #2. The arrest report furnished by the City is currently the only source of information as to the identities of the officers; the plaintiff may rely on it and explore the conduct of the individuals in discovery. It may be that three, two, one, or none of the officers are at fault; it remains to be seen.

Finally, defendants make no argument, let alone a showing, that the defendant officers

suffered prejudice from the timing of Mr. Catalano's naming them as defendants. At any rate,

they surely would know if they were present on the scene that evening. Accordingly, the portion

of the motion seeking dismissal on the basis of untimeliness and failure to meet the requirements

of fictitious-party practice will be denied.

### d. Claim for Supervisory or Monell Liability

Defendants argue that a § 1983 claim for municipal or supervisory liability against the

City must be dismissed as the fourth amended complaint "fails to sufficiently allege how the City

was deficient in its training or supervision of its employees." (ECF No. 45-3 at 24.) They further

contend that the fourth amended complaint does not adequately plead that the City knew of and

acquiesced to wrongdoing by its employees. (*Id.* at 26.)

Supervisory liability under § 1983 requires affirmative conduct by the supervisor and

cannot accrue based solely on vicarious liability. *Iqbal*, 556 U.S. at 675–76; *Bernard v. E.

Stroudsburg Univ.*, 700 F. App'x 159, 163 (3d Cir. 2017); *Parkell v. Danberg*, 833 F.3d 313, 330

(3d Cir. 2016); *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990). Thus, to establish

supervisory liability on a § 1983 claim, a plaintiff must show that a supervisor "participated in

violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had

knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty.

Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *see also Bernard*, 700 F. App'x at 163.

Supervisory liability may also exist if a supervisor has implemented or maintained a policy,

practice, or custom that harmed a plaintiff. *Parkell*, 833 F.3d at 330; *Santiago v. Warminster

Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

While Mr. Catalano has labeled the second cause of action in his fourth amended complaint as a claim against the Newark Police Department[4] and the City for "Supervisory Liability, Failure to Act, Liability [sic], Training, or Supervise," it appears that this cause of action more accurately states a claim for *Monell* liability, which is separately discussed below. Claims under § 1983 for supervisory liability are generally asserted against individual supervisors, while claims against municipalities are analyzed under *Monell. See, e.g.*, *Santiago*, 629 F.3d at 128–29, 134–35; *A.M.*, 372 F.3d at 580, 585–86; *Andrews*, 895 F.2d at 1478, 1480. Accordingly, the second cause of action shall be analyzed under the standard for *Monell* claims rather than the standard typically applied to § 1983 claims asserted against individual supervisors.

Defendants argue that Mr. Catalano's *Monell* claim must be dismissed because he failed to sufficiently identify conduct by police officers and failed to specify a policy or custom that resulted in a constitutional violation. (ECF No. 45-3 at 29.) They also contend that the fourth amended complaint does not connect alleged customs and practices of racial discrimination against African-Americans to a violation of Mr. Catalano's right to be free of discrimination as a racially white person. (*Id.* at 30.) Defendants also argue that the fourth amended complaint fails to state a claim against the City for failure to train its employees.[5] (ECF No. 45-3 at 24–26.) They characterize Mr. Catalano's allegations as conclusory and argue that "Plaintiff fails to allege adequately allege [sic] any shortcoming in the City's training programs." (*Id.* at 25.)

---

[4]     As discussed above, this Court previously dismissed with prejudice similar claims against the Newark Police Department and now reaffirms that dismissal, as the City is the proper defendant to such claims.

[5]     Defendants included this argument in the section of their brief addressing supervisory liability. As the Court determined that all such claims were better treated simply as *Monell* claims, the argument is considered here.

Like individual supervisors, municipalities may not be held liable purely on a theory of vicarious liability, but only for their own acts. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35–36 (2010); *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 174–75 (3d Cir. 2017); *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). "A municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation." *Mann*, 872 F.3d at 175; *see also Thomas*, 749 F.3d at 222; *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009).

Liability may also exist on a *Monell* claim based on a municipal defendant's failure to properly train employees to avoid violating constitutional rights. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). To find such liability, however, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick*, 563 U.S. at 61 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *Thomas*, 749 F.3d at 222–23. A plaintiff must establish deliberate indifference with proof that the defendant ignored a known or obvious result, and therefore that the defendant had "notice that a course of training is deficient in a particular respect." *Connick*, 563 U.S. at 62; *Wright v. City of Phila.*, 685 F. App'x 142, 147 (3d Cir. 2017), *cert. denied* ___ S. Ct. ___, 2017 WL 3507552 (Oct. 16, 2017); *Thomas*, 749 F.3d at 223. The alleged training deficiencies must also be so "closely related" to the injury ultimately inflicted upon the plaintiff as to have been an actual cause of the harm. *City of Canton*, 489 U.S. at 391; *Thomas*, 749 F.3d at 222.

The fourth amended complaint alleges that Newark police officers make a practice of employing racial stereotypes in making stops and arrests and that Newark had notice of this by way of "various U.S. D.O.J. oversight reports, civilian complaints, and testimony that illegal

stops and searches, arrests, and detainments are occurring." (ECF No. 42 ¶¶ 43–44; *see also id.* ¶¶ 63–64, 66, 68.) Mr. Catalano alleges that, despite this, Newark "has not taken the step to retrain, discipline, and supervise its police force . . . or remedy the problem of constitutional violations." (*Id.* ¶¶ 44–45; *see also id.* ¶ 67.) He specifically urges that "the acts of the individual police officers specifically racial profiling, false reporting, unlawful stops and searches, unlawful arrests, false imprisonment, objectively signal deficiency in the Newark Police Dept. training program, yet the Dept. choose [sic] to ignore these signals." (*Id.* ¶ 46; *see also id.* ¶¶ 69–70.)

The Court finds that, especially given the leniency afforded pro se litigants, these allegations sufficiently state a *Monell* claim, particularly a claim for failure to train. The fourth amended complaint alleges that, due to deficient training, Newark police officers routinely make unconstitutional stops and arrests. It further specifies that the Newark Police Department, and by inference the City, had notice of such training deficiencies as it received reports and complaints regarding the resulting constitutional violations. Finally, as the Court has previously found that Mr. Catalano has stated a claim for unlawful search, false arrest, and false imprisonment, it may infer a causal connection between the alleged training deficiencies and the harm that Mr. Catalano allegedly suffered. For these reasons, the portion of defendants' motion seeking dismissal of the *Monell* claim will be denied.

### e. *Equal-Protection Claim*

The Court has already determined that Mr. Catalano's third cause of action will be dismissed upon screening review for failure to state a claim. Accordingly, the portion of defendants' motion seeking dismissal of this claim will be denied as moot.

### f. Qualified Immunity

Despite a robust recitation of the law related to qualified immunity, the full extent of defendants' argument that qualified immunity should be applied in this action to dismiss Mr. Catalano's claims against the defendant officers appears to be the contention that they "acted in an objectively reasonable manner when they arrested Plaintiff." (ECF No. 45-3 at 37.)

Officials may defend against civil liability by asserting qualified immunity "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Davenport v. Borough of Homestead*, 870 F.3d 273, 279–80 (3d Cir. 2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Determining the applicability of qualified immunity involves examining two questions: (1) whether, taking facts in the light most favorable to the plaintiff, a violation of a constitutional right has been alleged; and (2) whether the right alleged to have been violated was "clearly established," within the specific context of the case. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Davenport*, 870 F.3d at 280.

As discussed above, Mr. Catalano has stated a claim for false arrest and false imprisonment, and has thus alleged a violation of his constitutional rights. There should be no doubt that the right to be free from arrest without probable cause is clearly established. *See, e.g.*, *James*, 700 F.3d at 680; *Dowling*, 855 F.2d at 141. The notion that an arrest on a racially discriminatory basis may violate equal protection standards is not novel. Based solely on the facts alleged within the pleading, taken as true and interpreted most favorably to Mr. Catalano, as the Court must do on a motion to dismiss under rule 12(b)(6), there is presently no ground dismiss the claims against the defendant officers on the basis of qualified immunity. The Court acknowledges the advisability of resolving qualified-immunity issues as soon as possible. *See,*

*e.g.*, *Pearson*, 555 U.S. at 232. Still, with no development of facts and no discovery, a decision on the issue of qualified immunity at this point in this case would be premature. Accordingly, the portion of the motion seeking dismissal on the basis of qualified immunity will be denied.

### g. *Punitive Damages and Pre-judgment Interest*

Defendants argue that the Court must also dismiss Mr. Catalano's "claims"[6] for punitive damages and pre-judgment interest. (ECF No. 45-3 at 37–39.) They urge that the fourth amended complaint does not justify punitive damages against the defendant officers, as it fails to plead sufficient facts to show that they acted with evil motive or with reckless indifference to Mr. Catalano's rights. (*Id.* at 37.) They assert that punitive damages against the City are barred under federal law and the New Jersey Tort Claims Act. (*Id.* at 37–38.) They additionally argue that the Tort Claims Act bars recovery of pre-judgment interest from the City. (*Id.* at 38–39.)

The defendants have not explained their assumption that provisions of the Tort Claims Act are relevant to this action under 42 U.S.C. 1983. Accordingly, arguments raised under that statute will be disregarded.

Punitive damages in an action under § 1983 are generally appropriate only when a defendant's conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (internal quotation marks omitted); *see also Carroll v. Clifford Twp.*, 625 F. App'x 43, 46 (3d Cir. 2015). As to the individual officers, these are issues fact not appropriate for resolution on a motion to dismiss. Accepting the facts of the complaint as true, and interpreting them most favorably to Mr. Catalano, the reader could draw an inference of reckless

---

[6]     The fourth amended complaint includes no distinct claim for punitive damages or pre-judgment interest, but such relief is sought in the *ad damnum* clause.

disregard of Mr. Catalano's right not to be subjected to a baseless arrest. As to the individual defendants, the motion to dismiss the punitive damages claim is denied.

As to a municipality, however, punitive damages are unavailable as a matter of law. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–71 (1981); *see also Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011). The punitive damages claim will therefore be dismissed as against the City of Newark.

While nothing in the fourth amended complaint seems to allege that the defendant officers stopped or arrested Mr. Catalano with evil intent, it does allege that they arrested him simply after seeing him riding in a vehicle down the street and following a stop and search that revealed no drugs, contraband, or other evidence of a crime. On the other hand, it is clear that punitive damages could not be awarded against the city.

## VI.    CONCLUSION

For the foregoing reasons, upon screening review under 28 U.S.C. § 1915(e)(2)(B), the fourth amended complaint (ECF No. 42) will be permitted to go forward. The defendants' motion to dismiss (ECF No. 45) will be granted as to

1.   All claims asserted against the Newark Police Department, to whatever extent the fourth amended complaint asserts any such claims; and

2.   The demand for punitive damages as against the City of Newark.

The remainder of defendants' motion to dismiss will be denied.

DATED: December 1, 2017

KEVIN MCNULTY
United States District Judge

24